1
2
3
4
5
6

7                           **UNITED STATES DISTRICT COURT**

8                           **EASTERN DISTRICT OF CALIFORNIA**

9
10
11

RONDEE STIVERS,                          )   Case No.: 1:19-cv-01110-BAM
                                         )
12              Plaintiff,               )   **ORDER REGARDING SOCIAL SECURITY**
                                         )   **COMPLAINT**
13       v.                              )
                                         )
14  ANDREW M. SAUL, Commissioner of Social )
    Security,                            )
15                                       )
                                         )
16              Defendant.               )
                                         )
17  _____)

18                                 **INTRODUCTION**

19       Plaintiff Rondee Stivers ("Plaintiff") seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner") denying her applications for disability insurance

21  benefits under Title II of the Social Security Act and supplemental security income under Title XVI of

22  the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were

23  submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

24       Having considered the briefing and record in this matter, the Court finds the decision of the

25  Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

26

27  _____

28  [1]     The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including
    entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 7, 8, 16.)

                                              1

1    and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to

2    deny benefits.

3                                    **FACTS AND PRIOR PROCEEDINGS**

4            Plaintiff filed an application for disability insurance benefits on December 11, 2015, and an

5    application for supplemental security income on December 14, 2015.  AR 202-05, 211-15.[2]  Plaintiff

6    alleged that she became disabled on December 9, 2015, due to severe depression, sleep apnea, and

7    anxiety.  AR 229, 236.  Plaintiff's applications were denied initially and on reconsideration.  AR 119-

8    22, 128-33.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Scot Septer held a

9    hearing on February 27, 2018.  AR 36-74.  ALJ Septer issued an order denying benefits on July 3,

10   2018.  AR 18-30.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied,

11   making the ALJ's decision the Commissioner's final decision.  AR 8-12.  This appeal followed.

12           **Hearing Testimony**

13           The ALJ held a hearing on February 27, 2018, in Fresno, California.  Plaintiff appeared at the

14   hearing with her attorney Jonathan Pena.   AR 38.  Brenda Cartwright, an impartial vocational expert,

15   also appeared and testified.  AR 21, 38.

16           At the outset of the hearing, the ALJ clarified that he intended to send Plaintiff for a

17   consultative examination.  AR 43.  In response to questions from the ALJ, Plaintiff testified that she

18   lives in a house with her daughter and son-in-law.  AR 44.  She completed high school and then went

19   to beauty college.  AR 68.  Plaintiff confirmed that she worked at Trader Joe's from 2003 to 2005 at

20   the demo booth in the back of the store, serving food, coffee.  AR 45. She had a dispute with the

21   manager and was fired from that job.  AR 46-47.  From 2003 to 2016, Plaintiff also was self-employed

22   as a mobile hair stylist/cosmetologist.  She also had a stationary workspace in her home and has had a

23   cosmetology certificate for 35 years.  She was on her feet for most of the time at that job.  She stopped

24   doing the work because standing was getting harder and the gossip got to her.  She got tired and

25   noticed that she was not producing the same type of work.  It was more mental for her.  Her hands

26   changed too, but not huge, and she started to feel changes in her body.  AR 47-49.  Plaintiff also

27

28   [2]        References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

1  worked for a period of time with in-home support, providing care for individuals.  One time helping

2  someone to ambulate, she fell and hurt her back.  The jobs began to get increasingly harder for her and

3  she last worked for her sister.  AR 50-53.

4       When asked about a typical day, Plaintiff testified that on her best days, she will get up, have a

5  cup of coffee or tea and chat with her son-in-law before he goes to work.  There are some days that she

6  cannot get out of bed because she is depressed, or her back is hurting.  She gets like that three or four

7  days a week.  AR 53-54.  Plaintiff also testified that her "concentration level is zilch."  AR 54.  She

8  cannot finish a project.  She tries to do things around the house.  She goes outside and walks the dog.

9  AR 54.

10       Plaintiff confirmed that she takes medications—Wellbutrin and Celexa—for her moods.  When

11  she is having a bad day and her thought processes are spinning, she will take an Ativan, which calms

12  her down.  She feels like the medication has been helping, but there are some days she wants to stop it

13  because she feels like it is getting worse.  She is going to continue to take them because she is afraid

14  that she will end up like before – suicidal.  AR 55-56.

15       Plaintiff reported that she tries to go shopping, but sometimes she cannot get out of the car or

16  has social phobia about people.  AR 57.  Plaintiff testified that she has a good network of friends.  She

17  will have coffee with one girlfriend and will spend time with her mom. AR 58.

18       Plaintiff has tried to work since she gave up the styling and in-home care.  She still does hair

19  for a couple of people.  AR 58.

20       When asked about an MRI, Plaintiff testified that she had it done because she was feeling some

21  changes in her back.  The doctor told her she has a large amount of arthritis in her back and pinched

22  nerves.  She cannot sweep, but she can do laundry.  AR 59-60.

23       In response to questions from her attorney, Plaintiff testified that she has back pain all the time,

24  but it is gone when she is lying down.  AR 60-61.  Following the MRI, Plaintiff testified that her

25  activities were limited because of the back issues.  She will think before she picks anything up and

26  will have to do things in short spurts.  She can stand about 15 or 20 minutes at a time before she will

27  have to take a break.  She can lift and carry about 15 pounds.  She can sit as long as she can shift her

28

3

1    body, but it depends upon the day.  Some days are worse than others.  She will have maybe three or

2    four bad days in a week.   AR 62-64.

3         Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The VE categorized

4    Plaintiff's past work as demonstrator, hairstylist and home attendant.  AR 68-69.  The ALJ also asked

5    the VE hypotheticals.  For each of the hypotheticals, the ALJ asked the VE to assume an individual of

6    the same age, education and vocational background as Plaintiffs.  For the first hypothetical, the ALJ

7    asked the VE to assume an individual capable of a range of work at the medium exertional level.  The

8    VE testified that such an individual could perform all of Plaintiff's past work.  If that particular

9    individual was limited to performing jobs of a non-complex nature that required the performance of no

10   more than simple routine tasks, the VE testified that the individual could not perform any of Plaintiff's

11   past work.  There would be other jobs in the national economy at the light level that the individual

12   could perform, such as sales attendant, housekeeping cleaner, and marker.  AR 69.

13        For the third hypothetical, the ALJ asked the VE to assume an individual who was at the light

14   exertional level with no other limitations.  The VE testified that such a person would be able to do the

15   demonstrator job and hairstylist.  AR 70.  If this individual were limited to performing jobs of a non-

16   complex nature, simple, repetitive tasks, this individual could not perform any of Plaintiff's past work.

17   AR 70.  The VE testified that she gave light jobs before, but would now give medium jobs of bagger,

18   hand packager and change house attendant.  AR 70-71.

19        For the final hypothetical, the ALJ asked the VE to consider an individual who would be

20   absent from work on an unscheduled basis two times per month.  The VE testified that there would not

21   be any competitive employment for that individual.   AR 71.

22        Following the ALJ's questions, Plaintiff's attorney asked the VE to consider a hypothetical

23   individual at the medium exertional level with simple, routine tasks who would be off task 20 percent

24   of the work.  The VE testified that the individual could not perform any of the claimant's past work

25   and the limitations would preclude the person from maintaining any job in the national economy.  AR

26   71-72.

27   ///

28   ///

4

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 21-30.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 9, 2015, the alleged onset date.  AR 23.  The ALJ identified degenerative disc disease as a severe impairment.  AR 23-24.  The ALJ determined that the severity of Plaintiff's impairment did not meet or equal any of the listed impairments.  AR 24-25.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of medium work.  AR 25-28.  With this RFC, the ALJ found that Plaintiff was capable of performing her past relevant work as a demonstrator.  AR 28-29.  In the alternative, the ALJ found that there were other jobs in the national economy that the Plaintiff could perform.  AR 29.  The ALJ therefore concluded that Plaintiff had not been under a disability from December 9, 2015, through the date of the decision.  AR 29-30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

1  determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

2  and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

3  *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

4  **REVIEW**

5     In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

6  substantial gainful activity due to a medically determinable physical or mental impairment which has

7  lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

8  1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

9  severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

10  her age, education, and work experience, engage in any other kind of substantial gainful work which

11  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

12  burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

13  1990).

14  **DISCUSSION**[3]

15     Plaintiff asserts the following arguments in support of remand to the Commissioner for further

16  proceedings:

17    1. The Agency erred by failing to provide the necessary background information regarding Plaintiff's physical impairments to the consultative examiner.

18    2. The ALJ failed to properly evaluate the opinion from Dawn Herberer, Plaintiff's friend, who submitted a third-party witness statement.

19    3. The ALJ erred by failing to develop the record and obtain an updated opinion of Plaintiff's mental functional capacity, and in failing to properly evaluate the severity of Plaintiff's mental impairments at Step Two.

20

21    4. The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints.

22

23  (Doc. 13 at 1.)

24  ///

25  ///

26

27  [3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

28

1

**A.  Consultative Examiner – Dr. Roger Wagner**

2          On March 21, 2018, Dr. Roger Wagner completed a consultative internal medicine

3  examination of Plaintiff based on her chief complaint of low back pain.  AR 525-28.  Based on a

4  physical examination, Dr. Wagner opined that Plaintiff had no limitations for standing and walking

5  with normal breaks, no sitting limitations, could lift/carry 50 pounds occasionally and 25 frequently,

6  could frequently climb stairs and ramps, stoop and crouch and could occasionally climb ladders and

7  scaffolds.  AR 528.  The ALJ afforded Dr. Wagner's opinion "significant weight" because it was

8  based on examination and the findings were consistent with the objective evidence.  AR 27-28.

9          Plaintiff contends that the ALJ erred by assigning substantial weight to Dr. Wagner's opinion,

10  because Dr. Wagner did not review or have access to Plaintiff's medical records.  (Doc. 13 at 8.)  In

11  support of her argument, Plaintiff cites regulations requiring the agency to "give the consultative

12  examiner any necessary background information about [the claimant's] condition."  *Id.* (citing 20

13  C.F.R. §§ 404.1517, 416.917).  Plaintiff's argument is not persuasive.

14          The Commissioner does not appear to dispute Plaintiff's assertion that Dr. Wagner did not

15  review or have access to Plaintiff's medical records.  (Doc. 14 at 18-19.)  However, it is not evident

16  from the record that Dr. Wagner failed to receive or review necessary background information.  While

17  Plaintiff avers that "as Dr. Wagner stated, he was not provided with any pertinent medical background

18  information or records to gain a complete picture of Plaintiff's impairment" (Doc. 13 at 9), there is no

19  such express statement in Dr. Wagner's report.  In the review of records section of his report, Dr.

20  Wagner stated the review was "[s]ignificant for a medical source vendor questionnaire only."  AR

21  525.  Additionally, in the history of present illness section of his report, Dr. Wagner identified that

22  Plaintiff had "some rare left meralgia paresthetica, but no obvious radiculopathy.  Radiologic studies

23  apparently show degenerative joint disease."  AR 525.  Taken together, these statements suggest that

24  Dr. Wagner reviewed records or background information concerning the history of Plaintiff's physical

25  impairments.  In the absence of evidence that Dr. Wagner lacked access to Plaintiff's medical records,

26  there is no error.  *See Bailey v. Saul*, No. 1:19-cv-01313-SKO, 2021 WL 325633, at *5 (E.D. Cal. Feb.

27  1, 2021) (finding ALJ did not err where there was no evidence that consultative examiner's opinion

28

1   was made without access to claimant's medical records in violation of § 416.917), citing *Andrews v.*

2   *Shalala*, 53 F.3d 1035,1039-40 (9th Cir. 1995).

3            Even if Dr. Wagner did not receive or review all of Plaintiff's medical records, a consultative

4   examiner's opinion may nonetheless constitute substantial evidence where, as here, it rests on an

5   independent examination.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Case law

6   in both the Ninth Circuit and in the Eastern District indicates that an ALJ may rely on a consultative

7   examiner's opinion when that opinion is based on an independent examination and consistent with the

8   record as a whole even if the consultative examiner did not review or receive medical records.  *See*

9   *Pacheco v. Berryhill*, 733 Fed.App'x 356, 359 (9th Cir. 2018) ("Although it is unclear from the record

10  whether Dr. Gist in fact reviewed the records at issue, he did base his opinion on his own examination

11  of Pacheco. As a result, Dr. Gist's opinion constitutes substantial evidence, and the ALJ did not err by

12  relying upon it."); *Castaneda v. Astrue*, 344 Fed.App'x 396, 398 (9th Cir. 2009) ("Even assuming Dr.

13  Cunningham did not review Castaneda's October 2003 MRI, the ALJ did not err in considering Dr.

14  Cunningham's report. Dr. Cunningham's assessment rested on his own independent examination of

15  Castaneda and was consistent with the record as a whole"); *Clark v. Saul*, No. 1:19-CV-01587-GSA,

16  2021 WL 1103700, at *8 (E.D. Cal. Mar. 23, 2021) (finding ALJ did not err in according weight to the

17  opinions of the consultative examiners without first providing them medical records for review);

18  *Gilmer v. Comm'r of Soc. Sec.*, No. 2:17-CV-0845-DMC, 2019 WL 112984, at *6 (E.D. Cal. Jan. 4,

19  2019) (finding ALJ did not commit error in relying on opinions rendered by examining physicians

20  where the physicians were not provided with all medical records; concluding that examining

21  physician's opinion alone constituted substantial evidence because it rested on his own independent

22  examination of the claimant); *cf. Encinas v. Saul*, No. 1:19-cv-00470-GSA, 2021 WL 1022773, at *5

23  (E.D. Cal. Mar. 17, 2021) (declining to find error where claimant's cited cases failed to directly

24  support the proposition that an ALJ commits reversible error when she accords any amount of weight

25  to an uncontradicted opinion of a CE who reviewed no medical records).

26            Cases cited by Plaintiff are factually distinguishable.  Three of the cited cases involved reversal

27  of the ALJ's decision where the ALJ favored the opinion of a consultative examiner who did not

28  receive or review the claimant's medical records over the opinion of a treating or examining opinion.

1  (Doc. 13 at 8-9.)  For instance, in *Turk v. Berryhill*, No. 2:17-CV-00767 AC, 2018 WL 3363738, at *5

2  (E.D. Cal. July 10, 2018), the court found the ALJ erred in assigning great weight to the consultative

3  examiner's opinion where the examiner did not have access to or review the claimant's medical

4  records and the opinion conflicted with the treating physician notes and the findings of another

5  examining physician.  Similarly, in *Peacock v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00523-PHX-

6  BSB, 2018 WL 2753151, at *6 , the court found the ALJ erred by assigning little weight to the opinion

7  of an examining physician and instead assigning great weight to the opinion of a consultative

8  examiner who was not provided with any of the claimant's medical records.   In *Valle v. Astrue*, 2010

9  WL 669100, at *6–8 (C.D. Cal. Feb. 23, 2010), the court found the ALJ erred by rejecting the opinion

10  of the claimant's treating physician and instead relying on the opinion of the consultative examiner

11  who was not provided with the claimant's medical records.  Here, however, Dr. Wagner's opinion was

12  the only examining or treating physician opinion of record regarding Plaintiff's physical RFC.

13         In *Pamela E. v. Saul*, No. 4:19-cv-0004-SLG, 2019 WL 6257728, at *13 (D. Alaska Nov. 22,

14  2019), the court reversed the ALJ's decision where the consultative examiner "expressly lamented the

15  lack of documentation regarding [the claimant's] past hospitalizations for suicide attempts as well as

16  records documents [claimant's] mental health at the time of the evaluation."  *Id.*  Dr. Wagner made no

17  such similar statements concerning any lack of medical records or documentation.

18         Plaintiff's remaining citation to *Ladue v. Chater*, No. C-95-0754 EFL, 1996 WL 83880, at *5

19  (N.D. Cal. Feb. 16, 1996), also is distinguishable.  In *Ladue*, the court found that ALJ erred by failing

20  to provide the consultative examiner with the claimant's medical file where the consultative examiner

21  appeared to misunderstand the claimant's treatment.  *Id.*  Specifically, the *Ladue* court indicated that

22  prior to his examination, the consultative examiner "was provided with only one progress note . . .

23  which mentioned plaintiff's asthma and her arthritic condition.  He was aware that plaintiff was on

24  Elavil but incorrectly guessed that it was for depression instead of arthritis.  This lack of information

25  might have frustrated the purpose of the consultation . . . ."  *Id.*  The court's decision in *Ladue*

26  therefore rested, in part, on the consultative examiner's misunderstanding of the claimant's

27  medications.  Plaintiff's argument in this case suggests that Dr. Wagner misunderstood Plaintiff's

28  condition, contending that Dr. Wagner speculated that "Plaintiff's reported symptoms and findings

1   'appear[] most consistent with occasional musculoligamentous strain'" (Doc. 13 at 9; AR 528.)

2   Plaintiff claims that Dr. Wagner's opinion would have been different if he had evidence critical to

3   assess the severity and limiting effects of Plaintiff's back impairment, particularly a November 29,

4   2017 MRI.  (Doc. 13 at 9.)  The MRI at issue revealed degenerative change of the lumbar spine "most

5   pronounced at L3-L4 through L5-S1."  AR 488-89.  Dr. Wagner expressly noted that "[r]adiologic

6   studies apparently show degenerative joint disease."  AR 525.  He also noted that Plaintiff had never

7   had any injections or surgeries and had "some rare left meralgia paresthetica, but no obvious

8   radiculopathy." *Id.*  There is no indication that Dr. Wagner lacked information concerning Plaintiff's

9   back or that he suffered from a misunderstanding regarding Plaintiff's treatment or condition.

10   **B.  Third-Party Witness Testimony – Dawn Heberer**

11   On January 18, 2016, Ms. Heberer, Plaintiff's friend, provided a Function Report – Adult –

12   Third Party.  AR 239-46.  In the report, she detailed that Plaintiff did not have any problem with her

13   personal care and did not know if she needed special instructions to take care of her personal needs.

14   Ms. Heberer indicated that Plaintiff's daughter reminded Plaintiff to take her medicine.  AR 240-41.

15   She reported that Plaintiff could walk, drive a car, ride in a car, go out alone and shop in stores for

16   food and personal items.  AR 242.  Plaintiff also could pay bills, count change and use a

17   checkbook/money order.  AR 242.  Plaintiff spent time with others, engaging in walks and movies, but

18   experienced some anger and isolation issues.  AR 243-44.  Ms. Heberer identified that Plaintiff's

19   condition affected her sitting, memory, completing tasks, concentration, understanding, following

20   instructions and getting along with others.  Plaintiff did well with walking, but she could not pay

21   attention for long.  AR 244.  She also was very impatient with authority figures and, when stressed,

22   would shut down and have "a mental meltdown."  AR 245.

23   On March 26, 2016, Ms. Heberer completed a second Function Report – Adult- Third Party.

24   AR 297-304.  In the report, Ms. Heberer stated that Plaintiff had no problem with her personal care

25   except when in a depressed state, and Ms. Heberer did not know if Plaintiff needed special instructions

26   to take care of her personal needs.  AR 298-99.  Ms. Heberer again indicated that Plaintiff's daughter

27   reminded Plaintiff to take her medicine.  AR 299.  She reported that Plaintiff cleaned her room, but it

28   took a long time and Plaintiff had trouble concentrating.  AR 299.  She also reported that Plaintiff

going outside depended upon her state of mind and that she had seen Plaintiff in such a depressed state that she did not "want to live, she can't function." AR 300. Plaintiff could walk, drive a car, ride in a car, go out alone and shop in stores for food. Plaintiff also could pay bills and count change. AR 300. Plaintiff spent time with others, engaging in walks and movies, and she also sometimes went to church. AR 301. Ms. Heberer indicated that Plaintiff sometimes needed to be reminded to go places "when she is unable to function because of her severe depression" and sometimes needed someone to accompany her. AR 301. Ms. Heberer also indicated that Plaintiff had some anger problems and had seen Plaintiff decline in concentration level and her desire to have social interaction. AR 302. Plaintiff's condition reportedly affected her sitting, memory, completing tasks, concentration, understanding, following instructions and getting along with others. Plaintiff did well with walking, but could not pay attention for long, maybe five minutes. AR 302. She also was very impatient with authority figures and could not handle stress well, getting upset, impatient and shutting down. Change also overwhelmed her. AR 303.

In addition to the third-party reports, on May 3, 2017, Ms. Heberer submitted a letter regarding Plaintiff. Ms. Heberer stated that it was "extremely difficult to have a friendship with her as she has erattic [sic] behavior, she stays in bed for days." AR 341. Plaintiff reportedly said she is overwhelmed with life, cannot cope and is depressed. Ms. Heberer will call, but Plaintiff will not answer. They will visit, but Plaintiff "will become very agitated and angry for no apparent reasons and retreat to her safe place as she calls it (her Bedroom)." AR 341.

Plaintiff argues that the ALJ failed to properly evaluate the third-party statements of Dawn Heberer. (Doc. 13 at 10-11.) An ALJ must take into account competent lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citation omitted).

In this instance, the ALJ expressly considered Ms. Heberer's letter and the two third-party function reports submitted on behalf of Plaintiff and gave them "some weight with regard to the claimant's daily activities." AR 27. However, the ALJ noted that "the inability to pay attention for five minutes is not consistent with the claimant's testimony that she spent 20 minutes cutting hair, she

1    worked providing in home care in 2017, and she performed housekeeping in 2016." *Id.* The ALJ's

2    decision to reject a portion of Ms. Heberer's testimony because it was inconsistent with the record of

3    Plaintiff's activities is a germane reason to reject lay witness testimony. *See Bayliss v. Barnhart*, 427

4    F.3d 1211, 1218 (9th Cir. 2005) ("The ALJ accepted the testimony of Bayliss's family and friends that

5    was consistent with the record of Bayliss's activities and the objective evidence in the record; he

6    rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain

7    testimony is supported by substantial evidence and was not error."). The Court does not find error.

8        **C.  Step Two – Mental Impairment**

9        At step two of the sequential evaluation, the ALJ found that Plaintiff's anxiety, depression, and

10   social phobia did not cause more than minimal limitation in her ability to perform basic mental work

11   activities and were not severe. AR 24. Plaintiff contends, however, that the ALJ "failed to evaluate

12   her depression and anxiety in light of the longitudinal evidence of record." (Doc. 13 at 12.) Plaintiff

13   faults the ALJ for relying on "stale opinions from the non-examining physicians," contending that

14   subsequent treatment records revealed that those opinions "were not consistent with Plaintiff's mental

15   functioning the throughout the longitudinal relevant period." (*Id.*) Plaintiff argues that the ALJ

16   "committed harmful error because she ceased consideration of Plaintiff's depression at Step Two, and

17   failed to discuss her symptoms and limitations at subsequent steps of the sequential evaluation." (*Id.*

18   at 14.)

19       At step two of the five-step sequential evaluation, the ALJ is required to determine whether a

20   plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c),

21   416.920(c). "Step two is merely a threshold determination meant to screen out weak claims." *Buck v.*

22   *Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987).

23   "It is not meant to identify the impairments that should be taken into account when determining the

24   RFC . . . . The RFC . . . *should* be exactly the same regardless of whether certain impairments are

25   considered 'severe' or not." *Id.* (emphasis in original). Any error in failing to include an impairment

26   at step two is harmless if the ALJ considered any limitations imposed by the impairment in the RFC

27   determination at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects

28

1    that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ

2    made in failing to include the bursitis at Step 2 was harmless.").

3          Even assuming *arguendo* that the ALJ erred in finding Plaintiff's depression and anxiety not

4    severe at step two, any such error is harmless because the ALJ considered and discussed Plaintiff's

5    mental condition in the RFC at step four of the sequential evaluation.  Contrary to Plaintiff's

6    arguments, the ALJ expressly considered Plaintiff's treatment records regarding her complaints of

7    depression and anxiety and her symptom allegations at step four.  AR 26.  The ALJ summarized

8    Plaintiff's treatment records regarding mental symptoms, beginning with treatment records from 2012

9    and including treatment records from 2014 through 2017.  *Id.*  In evaluating Plaintiff's mental RFC,

10   the ALJ determined that the record indicated Plaintiff's mental symptoms had been under control, she

11   had done well with medication and that the records did not support a severe psychological medically

12   determinable impairment.  AR 28.

13         At step four, the ALJ also considered evidence from Plaintiff's treating provider, Dr. S. S.

14   Samrao, M.D., relative to Plaintiff's anxiety and depression.  AR 28.  According to the record, on May

15   23, 2017, Dr. Samrao wrote a letter indicating that Plaintiff had been treated since October 26, 2016,

16   and reported that her condition had not improved.  Dr. Samrao specified that Plaintiff had been

17   diagnosed with anxiety and depression by another physician and that Plaintiff needed a comprehensive

18   mental health evaluation.  Dr. Samrao noted that "[p]er patient she is not able to function normally in

19   the work field.  She also states she is unable to complete task required on a high functioning level."

20   AR 459.  The ALJ assigned this opinion "little weight," finding that the opinion noted the

21   psychological diagnosis had been made by another provider, "and seemed to stress this and the

22   claimant's subjective reports as a basis for a need for treatment."  AR 28.  The ALJ also noted that Dr.

23   Samrao's treatment records did not include any mental evaluations and the opinion "did not contain

24   quantifiable limitations on which to evaluate the claimant's disability claim."  AR 28.  Plaintiff has not

25   challenged the ALJ's assessment of Dr. Samrao's opinion.

26         Additionally, the ALJ considered the opinions of the non-examining state agency

27   psychological consultants, Preston Davis, Psy.D., and Robert de la Torre, Psy.D. AR 28.  Dr. Davis

28   opined in February 2016 that Plaintiff's affective and anxiety disorders were not severe, and she had

1    only mild restriction of activities of daily living, mild difficulties in maintaining social functioning,

2    and mild difficulties in maintaining concentration, persistence or pace.  AR 81-83, 92-94.  Dr. de la

3    Torre similarly determined in May 20, 2016 that Plaintiff's affective and anxiety disorders were not

4    severe, and she had only mild restriction of activities of daily living, mild difficulties in maintaining

5    social functioning and mild difficulties in maintaining concentration, persistence or pace.  AR 103-05,

6    114-16.  The ALJ gave these opinions significant weight because they were based upon a review of

7    the record and were consistent with the review.  AR 28.  As identified above, the ALJ further

8    explained that Plaintiff's mental symptoms had been under control and she had done well with

9    medication and the records did not support a severe psychological medically determinable impairment.

10   *Id.*

11           Plaintiff contends that the ALJ erred in relying on these opinions because their assessments

12   occurred before Plaintiff established therapy treatment services and included a review of extremely

13   limited evidence.  (Doc. 13 at 13.)  Plaintiff further contends that evidence subsequent to the state

14   agency physicians' review significantly contradicted their assessments and warranted further

15   development of the record with new medical opinion evidence.  (*Id.*)

16           Plaintiff's argument that the ALJ had a duty to further develop the record as a result of the

17   existence of medical records post-dating the opinions of Drs. Davis and de la Torre is not persuasive.

18   "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or

19   when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v.*

20   *Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The mere existence of medical records post-dating a

21   state agency physician's review does not in and of itself trigger a duty to further develop the record.

22   *See*, *e.g.*, *Charney v. Colvin*, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), aff'd, 647

23   Fed.App'x 762 (9th Cir. 2016) (finding that the ALJ did not err in relying on the opinions of state

24   agency physicians that did not account for subsequent medical records where subsequent records were

25   considered by the ALJ and were not inconsistent with RFC). Indeed, the opinions of the state agency

26   physicians constitute substantial evidence where they are supported by the medical record as a whole

27   and are consistent with it. *See Andrews*, 53 F.3d at 1041 ("reports of the nonexamining advisor need

28   not be discounted and may serve as substantial evidence when they are supported by other evidence in

1   the record and are consistent with it"). Although the state agency physicians' review did not include

2   certain of Plaintiff's subsequent medical records, the ALJ did consider and account for those records

3   and found that Plaintiff's mental symptoms had been under control, she had done well with

4   medication, and the records did not support a severe psychological medically determinable

5   impairment. *See* AR 26, 28. Contrary to Plaintiff's argument, the records post-dating Dr. Davis'

6   February 2016 opinion and Dr. de la Torre's May 20, 2016 opinion did not significantly contradict the

7   state agency physicians' opinions that her mental impairments were non-severe.  Treatment records in

8   2016 and 2017 consistently demonstrated that Plaintiff was doing well, and her symptoms were

9   controlled with her medications.  AR 476 ("doing very well on current meds," "stable," "doing well");

10  482 (symptoms "fairly well controlled with current medications"); 472 ("stable, doing well"), 474

11  ("stable, doing well"); 469 ("mood has been well most of the time"; "coping adequately"); 470

12  ("doing very well on current meds"); 465 ("good response to meds"): 466 ("doing very well on current

13  meds"); 463 ("working doing in-home support services;" "doing well,"); 461 ("continues to work in-

14  home support services and it is going well").

15          **D.  Plaintiff's Subjective Complaints**

16          Plaintiff contends that the ALJ failed to give legitimate reasons for discounting her subjective

17  complaints.  (Doc. 13 at 16.)  In deciding whether to admit a claimant's subjective complaints, the

18  ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014);

19  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must

20  produce objective medical evidence of her impairment that could reasonably be expected to produce

21  some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the

22  first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony

23  regarding the severity of her symptoms only by offering specific, clear and convincing reasons for

24  doing so. *Id.* at 1015.

25          Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be

26  expected to cause the alleged symptoms, but discounted her statements concerning the intensity,

27  persistence and limiting effects of those symptoms.  AR 26.  The ALJ was therefore required to

28  provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

15

1          The Court finds that the ALJ provided specific, clear and convincing reasons for discounting

2    Plaintiff's subjective complaints.  First, the ALJ found that Plaintiff's statements about the intensity,

3    persistence, and limiting effects of her symptoms were inconsistent with the objective medical

4    evidence, particularly Plaintiff's mental health records indicating her symptoms had "been stable" and

5    she "had done well with medication" and the very minimal physical records.  AR 26.  Although lack

6    of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that

7    the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  As discussed above,

8    the ALJ reasonably found that the limiting effects of her mental impairments were inconsistent with

9    mental health records demonstrating that Plaintiff was stable and doing well on her medications.

10   "Impairments that can be controlled effectively with medication are not disabling for the purpose of

11   determining eligibility for SSI benefits." *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th

12   Cir. 2006).

13          With respect to Plaintiff's physical complaints of back pain, the ALJ reasonably identified the

14   minimal history of treatment for such complaints, citing limited records from June, October and

15   November 2017.  AR 26-27.  An ALJ is permitted to consider lack of treatment in evaluating a

16   claimant's subjective complaints.  *See Burch*, 400 F.3d at 681 (concluding ALJ permitted to consider

17   lack of treatment in evaluating claimant's pain testimony); *Young v. Saul*, No. 19-15790, ---

18   Fed.App'x---, 2021 WL 515339, at *2 (9th Cir. Feb. 11, 2021)  (finding ALJ properly discounted

19   claimant's subjective complaints where "record evidence from the relevant time frame is devoid of

20   any significant treatment directed towards the [the claimant's] occasional contemporaneous

21   complaints of back pain"); *see also Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding

22   evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of

23   impairment).

24          Second, the ALJ considered that Plaintiff's reported symptoms were inconsistent with her

25   testimony regarding cutting hair and her ability to provide in-home care in 2017 and work as a

26   housecleaner in 2016 after her alleged onset date.  AR 27.  An ALJ may properly discount a claimant's

27   allegations of disabling limitations based on evidence of continued work activity after her alleged

28   onset date.  *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009) (finding

1   ALJ presented specific basis for discounting claimant's testimony where "she recently worked as a

2   personal caregiver for two years, and has sought out other employment since then"); *Presley-Carrillo*

3   *v. Berryhill*, 692 Fed.App'x 941, 945 (9th Cir. 2017) ("the ALJ reasonably found, [the claimant's]

4   typical daily activities were inconsistent with her symptom testimony—particularly given that she

5   already worked part-time . . . .").

6          For these reasons, the Court finds that the ALJ did not err in evaluating Plaintiff's subjective

7   complaints.

8                                            **CONCLUSION**

9           Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

10  evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

11  DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

12  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew M. Saul,

13  Commissioner of Social Security, and against Plaintiff Rondee Stivers.

14

15  IT IS SO ORDERED.

16      Dated:    **March 29, 2021**              /s/ *Barbara A. McAuliffe*

17                                        UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28